Isabel B. Wilson *vs.* Philip C. Wilson.

Essex. April 9, 1952. — July 7, 1952.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Williams, JJ.

*Husband and Wife*, Separate support.

A husband should be ordered in a separate support proceeding under G. L. (Ter. Ed.) c. 209, § 32, as amended, to pay his wife for her support $50 per week, instead of $35 per week as ordered by the Probate Court, in view of all the circumstances including his property, his annual income some $5,000 greater than his expenses, his provision for the "running expenses" of her residence and of an automobile for her use, and his maintenance of life insurance payable to her as beneficiary.

Petition, filed in the Probate Court for the county of Essex on July 6, 1951.

The case was heard by *Phelan,* J.

*Joseph P. Rooney,* (*Paul V. Power* with him,) for the petitioner.

*Frank A. Cashman,* for the respondent.

WILLIAMS, J. This is an appeal by the petitioner from a decree for separate maintenance under G. L. (Ter. Ed.) c. 209, § 32, ordering that her husband, the respondent, pay for her support the sum of $35 per week and $250 to her attorney for counsel fees. There are findings of material facts by the judge and a report of the evidence. The findings of the judge are not to be reversed unless plainly wrong, but all questions of law, fact, and discretion are before us and we may make such additional findings as are supported by the evidence. *Whitney* v. *Whitney,* 325 Mass. 28.

The parties were married on July 12, 1947, and thereafter lived in Marblehead and Swampscott until June 13, 1951, when the respondent deserted the petitioner. There is no child of the marriage but each party has a minor daughter by a previous marriage. Both parties have been divorced. The petitioner is receiving $10 per week from her former husband for the support of her daughter and the respondent is paying $35 per week as alimony to his former wife. There is no question but that the petitioner is living apart from her husband for justifiable cause. The only issue is the amount to which she is reasonably entitled for support and which he is reasonably obligated to pay.

In 1951, at the time of hearing, the petitioner was about forty-four years of age and her husband one year older. She was trained and formerly was registered as a nurse but has not practised her profession for fifteen years. Although she had a serious surgical operation in 1950, she is now in good health. The respondent is president, treasurer, and one of three directors of Wilson Motors, Inc., a corporation having the sales agency for a well known automobile in Lynn. Of the 150 shares of the corporate stock of the corporation he owns 40 shares which appear from its 1951 certificate of condition to have a book value of $520 per

share.   He and his wife own as tenants by the entirety a
seven room house with a two car garage in a "fine resi-
dential section" of Swampscott.   The property was pur-
chased for $18,000 in 1949 subject to a mortgage of $10,000
which has been reduced to $9,200.   The petitioner owns a
cottage near Lake Winnepesaukee, New Hampshire, which
was purchased by the respondent for $4,500 previous to
1945 and later transferred to her subject to a life interest
retained by him.   The respondent owns securities in the
form of stocks, other than his shares in Wilson Motors, Inc.,
of approximately $4,000 in value.   In recent years he has
received from salary and bonuses sums varying from
$10,274.05 in 1947 to $16,540 in 1950.   His income from
dividends and interest in 1950 was $1,086.25.   Of this
amount $400 was received as dividends from Wilson Motors,
Inc.   The respondent pays the real estate taxes on the New
Hampshire and Swampscott properties which in 1950
amounted to approximately $400.   He also pays the so
called "running expenses" of the Swampscott house in
which the petitioner continues to live.   In 1950 the re-
spondent paid a Massachusetts income tax of $159.33 and
a Federal income tax of $2,233.90.   The parties filed a joint
return and were entitled to four exemptions totaling $2,400.
We assume that while the parties are living apart the re-
spondent will not be entitled to exemptions for his wife
and for her daughter who formerly lived with them, nor
will the respondent while separated from the petitioner be
able to take advantage of the split income provision of the
tax law in determining the amount of his Federal income
tax.   See U. S. C. (1946 ed.) Sup. IV, Title 26, § 51 (b).   A
substantial increase in the respondent's tax is to be an-
ticipated.   The respondent pays $27.50 each month on the
principal of the Swampscott mortgage as well as interest on
the mortgage and on a small bank loan.   He pays $5 per
day for a room at a local hotel and undisclosed amounts for
food and clothing.   He is currently paying $1,000 per year
for his daughter's schooling at a private academy and owes
his mother $5,000 which she lent him to help buy his house.

He has maintained insurance policies on his life in which his wife is named beneficiary.

The petitioner has no income other than the $10 per week received from her former husband and what she can be expected to earn if she resumes the practice of her profession. She has the use of an automobile owned by Wilson Motors, Inc., which is apparently "serviced" by that company at the instance of the respondent. She is provided with heat, light, telephone, and water in the house which she occupies.

The evidence shows that after their marriage the parties lived in an apartment in Marblehead, the rental of which at first was $150 per month and later $125. Subsequently the house was purchased. The petitioner's daughter attended Abbot Academy, a private school, and her expenses were paid by the respondent. The parties made trips to Nassau, Florida, and Alaska, the last named trip being in connection with an automobile convention on the Pacific Coast. The respondent gave the petitioner an allowance of $75 a month. At times he would give her for her own use checks of $50. For a short time after the separation he sent the petitioner $50 weekly, later reduced to $30.

The amount payable by way of alimony rests in the sound discretion of the court and depends upon the circumstances of each case including the necessities of the wife, the pecuniary resources of the husband, the condition in life of the parties, their mode of living, and their conduct. *Brown* v. *Brown,* 222 Mass. 415. *Fitzgerald* v. *Fitzgerald,* 244 Mass. 61. *Whitney* v. *Whitney,* 325 Mass. 28. *Coe* v. *Coe,* 313 Mass. 232.

We think, in this case, that there is required for the support of the wife the payment by the husband of a somewhat larger amount than is provided by the decree. His recent income is substantially $17,500, and there is nothing in the evidence to indicate that it is likely to diminish in the near future. His expenses are roughly $12,500. Payment of $50 per week, the amount voluntarily paid by the respondent immediately after the separation, would in our opinion be fair to both parties. The amount awarded for

counsel fees was reasonable and proper. The decree should be modified by substituting $50 for the $35 therein provided. As so modified it is affirmed. Costs and expenses of this appeal may be allowed to the petitioner or her counsel in the discretion of the Probate Court. G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288.

*So ordered.*